UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TAMMY G. O/B/O C.W.W.,[1]

                                                              Plaintiff,                    Case # 20-CV-1300-FPG

v.                                                                                            DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                                   Defendant.
_____

## INTRODUCTION

Tammy G. ("Plaintiff") brings this action on behalf of her grandson ("C.W.W.") pursuant to Title XVI of the Social Security Act. She seeks review of the final decision of the Commissioner of Social Security that denied C.W.W.'s Supplemental Security Income ("SSI") application. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure Rule 12(c). ECF Nos. 12, 13. For the reasons that follow, the Commissioner's motion is DENIED, Plaintiff's motion is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion.

## BACKGROUND

In January 2015, Plaintiff applied for SSI with the Social Security Administration (the "SSA") on C.W.W.'s behalf. Tr.[2] 76. She alleged that C.W.W. had been disabled since December 2014 due to attention deficit hyperactivity disorder ("ADHD"). *Id.* On September 11, 2019, Administrative Law Judge Stephen Cordovani ("the ALJ") issued a decision finding that C.W.W.

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 10.

1

is not disabled within the meaning of the Act. Tr. 10-23. On July 16, 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (citation omitted).

### II. Child Disability Standard

An individual under 18 years old will be considered disabled if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner must follow a three-step process to evaluate child disability claims. *See* 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. *Id.* § 416.924(b). If so, the child is not disabled. If not, the ALJ proceeds to step two and determines whether the child has an impairment or combination of impairments

that is "severe," meaning that it causes "more than minimal functional limitations." *Id.* § 416.924(c). If the child does not have a severe impairment or combination of impairments, he or she is not disabled. If the child does, the ALJ continues to step three.

At step three, the ALJ examines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.924(d). If the child's impairment meets or medically or functionally equals the criteria of the Listings, he or she is disabled.

To determine whether an impairment or combination of impairments functionally equals the Listings, the ALJ assesses the child's functioning in six domains: (1) Acquiring and Using Information; (2) Attending and Completing Tasks; (3) Interacting and Relating with Others; (4) Moving About and Manipulating Objects; (5) Caring for Yourself; and (6) Health and Physical Well-Being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must cause "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(a). A child has a marked limitation in a domain when his or her impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2). A child has an extreme limitation in a domain when his or her impairment(s) "interferes very seriously" with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3).

## DISCUSSION

### I.  The ALJ's Decision

The ALJ analyzed C.W.W.'s benefits application under the process described above. At step one, the ALJ found that C.W.W. has not engaged in substantial gainful activity. Tr. 13. At

3

step two, the ALJ found that C.W.W. has ADHD, bipolar disorder, asthma, and obesity. *Id.* At step three, the ALJ found that these impairments, alone or in combination, do not meet or medically equal a Listings impairment. *Id.* Next, the ALJ found that C.W.W.'s impairments, alone or in combination, do not functionally equal a Listings impairment. Tr. 13-23. He concluded that C.W.W. had a "less than marked" limitation in every domain, except for the domains of "Interacting and Relating with Others," in which C.W.W. had a marked limitation, and "Moving About and Manipulating Objects," in which C.W.W. had "no limitation." Tr. 19-20.

**II.    Analysis**

Plaintiff argues that remand is warranted because, *inter alia*, the ALJ did not adequately consider C.W.W.'s need for a structured setting in the domain of "Attending and Completing Tasks." ECF No. 12-1 at 14-15. Because the Court agrees, it need not address Plaintiff's other arguments.

In the domain of "Attending and Completing Tasks," the SSA "consider[s] how well [the child] [is] able to focus and maintain [his] attention, and how well [he] begin[s], carr[ies] through, and finish[es] [his] activities, including the pace at which [he] perform[s] activities and the ease with which [he] change[s] them." 20 C.F.R. § 416.926a(h). Because he was born in 2008, C.W.W. is considered a "[s]chool-age" child under the regulations:

> When you are of school age[, *i.e.*, age 6 to age 12], you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

*Id.* § 416.926a(h)(2)(iv).  A child may be limited in this domain if he is "slow to focus on or fails to complete activities" of interest, "[g]ives up easily on tasks that are within the child's capabilities," "[r]epeatedly becomes sidetracked from activities," "frequently interrupts others," needs "extra supervision to stay on task," or cannot manage time or "organize self in order to complete assignments or chores."  S.S.R. 09-4p, 2009 WL 396033, at *5-6 (Feb. 18, 2009).

Importantly, under the regulations, "the ALJ must consider the effect that a structured or supportive setting may be having, and how the child would function outside of that structured or supportive setting."  *Nicole P. v. Comm'r of Soc. Sec.*, No. 20-CV-454, 2021 WL 3887259, at *8 (W.D.N.Y. Aug. 31, 2021); *see also* 20 C.F.R. § 416.924a(b)(5)(iv).  This is "[b]ecause a structured educational setting may minimize signs and symptoms of a claimant's impairment(s)." *Jennifer N. v. Comm'r of Soc. Sec.*, No. 19-CV-1672, 2021 WL 916018, at *4 n.7 (W.D.N.Y. Mar. 10, 2021) (internal quotation marks and brackets omitted).  "Even if the [child] is able to function adequately in the structured or supportive setting, the ALJ must consider how the claimant functions in other settings and whether the claimant would continue to function at an adequate level without the structured or supportive setting."  *Id.* (internal brackets omitted).  "For example, if the [child's] symptoms or signs are controlled or reduced in a structured setting, the ALJ must consider the amount of help the [child] needs from his or her parents, teachers, or others to function as well as she does; adjustments made to structure the [child's] environment; and how the [child] would function without the structured or supportive setting."  *Id.* (internal quotation marks, ellipsis, and brackets omitted).  The regulations specifically direct the ALJ to consider the child's use of special-education services.  *See* 20 C.F.R. § 416.924a(b)(7)(iv).

In this case, the ALJ's analysis of the "Attending and Completing Tasks" domain consists of the following:

5

> Despite the claimant's diagnosis of ADHD and distractibility, the claimant has been able to achieve good, satisfactory, or excellent grades in most classes with minimal absences (B13E/5, 8-9, B8F/14, 16, 19).  The claimant also exhibited intact attention and concentration at his consultative examination  (B3F).

Tr. 18.  The records cited are C.W.W.'s grades from the 2018-2019 school year, when he was enrolled in a special-education classroom with eight students, one teacher, and one aide.  *See* Tr. 523, 527.  The consultative examination occurred in 2015, before C.W.W.'s enrollment in special education.  *See* Tr. 289.  Absent from the ALJ's analysis is any substantive discussion of C.W.W.'s highly structured educational setting, as required by Section 416.924a(b)(5)(iv), (7).

This is an error warranting remand.  As the ALJ found, C.W.W. suffers from ADHD and bipolar disorder.  Tr. 13.  During the 2014-2015 school year—when he was in first grade—C.W.W.'s impairments left him unable to "function" and caused him to be "very disruptive" at school.  Tr. 191.  He needed frequent prompts to remain on task and caused "frequent interruptions."  Tr. 275.  C.W.W. had difficulties controlling his emotions, sharing, and managing his impulsivity.  Tr. 278.  Medication resulted in noted improvement to C.W.W.'s behavior, Tr. 282, 289, and he received high marks from his first-grade teacher.  *See* Tr. 184-92.

Over the ensuing years, however, C.W.W. continued to face difficulties at school, from fighting on the bus, Tr. 394, falling asleep at school, Tr. 398, skipping class, Tr. 406, stealing, Tr. 410, and hitting other students, *id.*  By the 2016-2017 school year—when C.W.W. was in third grade—C.W.W.'s report card showed that, academically, he was largely achieving below grade-level standards and expectations, and that, behaviorally, he was not acting consistent with his age.  *See* Tr. 500.  He displayed deficits in areas like "Listens for understanding," "Manages time efficiently," "Works Independently," "Follows classroom rules," and "Organizes/Prepares Materials."  *Id.*  C.W.W.'s teacher commented that C.W.W. was "NOT working up to his potential," did not try, left the room to avoid work, had no "desire to learn," and made "poor

choices." Tr. 499. Although C.W.W. was "intelligent enough" to learn the material, his behavior inhibited his ability to succeed. *Id.* During the 2017-2018 school year, C.W.W. was referred by his teachers for evaluation for special education services. *See* Tr. 530. The evaluation notes that, during that school year, C.W.W. had received 13 disciplinary referrals, two five-day suspensions, and five absences. *Id.* During the evaluation, C.W.W. was disruptive and repeatedly off-task, requiring a teacher's prompting to return to his work. Tr. 531. C.W.W.'s evaluation revealed significant deficits in behavioral and socioemotional functioning. *See* Tr. 534-35. The evaluator hypothesized that C.W.W. was attention-seeking and sought to control his environment, leading to inappropriate behaviors when he did not obtain what he wanted. *See* Tr. 537. In short, C.W.W. exhibited many of the behaviors that the SSA has identified as limitations in this domain. *See* S.S.R. 09-4p, 2009 WL 396033, at *5-6.

For the 2018-2019 school year, C.W.W. received an Individualized Education Program ("IEP") and was transferred to a special-education setting, which consisted of eight students to one teacher and one aide. *See* Tr. 523, 527. During the year, C.W.W.'s behaviors were "significantly reduced," Tr. 529, though it is evident that C.W.W.'s classroom setting was very structured and accommodating. *See, e.g.*, Tr. 520-21 (discussing the breaks and incentives C.W.W. receives between assignments, his need for close adult supervision and support, and methods of managing C.W.W.'s attention-seeking behaviors). C.W.W.'s grades increased significantly during that year. Tr. 237.

Despite C.W.W.'s growth academically, it is unclear whether C.W.W.'s progress at school translated into better behavior in more unstructured settings like home. In 2018, C.W.W. once set his room on fire. Tr. 45. He threw tantrums if asked to perform chores. Tr. 49. C.W.W.'s social worker repeatedly noted that C.W.W. struggles in unstructured environments. Tr. 378, 381, 383.

All of this evidence suggests that C.W.W.'s academic success—and, more broadly, his ability to focus, complete classroom assignments, and stay on task—is linked to the special education services and accommodations he receives. But the ALJ did not meaningfully address C.W.W.'s grades in the context of his need for a structured setting; nor did the ALJ analyze "the degree of limitation in functioning [C.W.W.] ha[s] or would have outside the structured setting." 20 C.F.R. § 416.924a(b)(5)(iv)(C). Instead, the ALJ appears to have concluded that C.W.W.'s academic progress alone was enough to find that he could attend and complete tasks in a manner consistent with his age. Tr. 18. The regulations specifically reject the idea that "good performance in a special education setting" necessarily means that a child is "functioning at the same level as other children [his] age who do not have impairments." 20 C.F.R. § 416.924a(b)(7)(iv).

To be sure, the ALJ's decision shows that he was aware of the evidence that C.W.W. had an IEP and was placed in a special-education classroom. *See* Tr. 16 (citing evidence). But the ALJ merely acknowledged the evidence; he did not explicitly analyze C.W.W.'s structured setting and accommodations, which leaves the Court unable to discern how the ALJ weighed those considerations when he concluded that C.W.W. had less than marked limitations in this domain. *See Moss v. Comm'r of Soc. Sec.*, No. 18-CV-365, 2020 WL 896561, at *3 (W.D.N.Y. Feb. 25, 2020) ("The ALJ's analysis . . . must be sufficiently discernible as to allow a reviewing court to ensure that the ALJ employed the proper standards and rendered a decision supported by substantial evidence."). Under these circumstances, remand is warranted so that the ALJ "can properly evaluate the effect that a structured school setting had on [C.W.W.'s] limitations." *Annarino v. Comm'r of Soc. Sec.*, No. 18-CV-238, 2019 WL 5290934, at *9 (W.D.N.Y. Oct. 18, 2019).

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is DENIED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 11, 2022
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York